## SAROS v. AVENUE THEATRE CO.

1. LANDLORD AND TENANT—INJURY BY WRONGFUL ACT—POISONS —TORTS.

   Whether the landlord acted in good faith or not, he was liable to his tenant for personal injuries caused by introducing into the room in which the tenant was sleeping a poisonous and volatile drug, i. e., formaldehyde, for the purpose, as the landlord claimed, of fumigating the premises.

2. SAME—TRIAL—DAMAGES—AGGRAVATION OF PRE-EXISTING CONDITION.

   Under uncontradicted testimony that plaintiff had previously enjoyed good health, which the act of the defendant impaired,

causing a chronic inflammation, by reason of irritating gases inhaled by the plaintiff, the court erred in charging the jury that if the formaldehyde merely aggravated a pre-existing condition plaintiff could not, under his declaration, recover.

3. SAME—DAMAGES.
  The only question for the jury was that of plaintiff's damages.

Error to Wayne; Rohnert, J. Submitted June 13, 1912. (Docket No. 41.) Decided October 2, 1912.

Case by George Saros against the Avenue Theatre Company for personal injuries. Judgment for defendant. Plaintiff brings error. Reversed.

*Guy E. Miller*, for appellant.

*Dennis B. Hayes*, for appellee.

BROOKE, J. Plaintiff, as lessee under defendant, had occupied the premises at No. 72 Woodward avenue, Detroit, for some five years prior to May 1, 1908. The lease under which plaintiff held was in writing, and according to its tenor expired on said date. Plaintiff, however, contended (apparently in good faith) that he had a right to continue in possession up to September 1, 1908. Between May 1 and May 6, 1908, one Frank Drew, defendant's manager, in company with a number of other men, made an abortive attempt to gain possession of the premises by force. As a result of this attempt, plaintiff, with a number of his employés, remained in the building during the night of May 6 and 7, 1908. The leased premises consisted of a single room, about 20 by 26 feet, with a ceiling about 20 feet high. Behind the rear partition of the room is located the stage of the Avenue Theatre. About 11:30 p. m., May 6, said Drew, with several employés, went upon the stage of the theater, bored a hole through the partition separating the stage from the room occupied by plaintiff, and, using a bicycle pump for that purpose, injected about two quarts of liquid formaldehyde into the

room where plaintiff and his employés were dozing upon chairs and shoe-shining seats. The formaldehyde ran down the wall and stood in pools upon the floor. This drug is highly volatile, and when exposed to air gives off a poisonous gas which is dangerous to human life, if inhaled for any considerable length of time. It acts directly upon the mucous membranes—the throat, nasal passages, and eyes. The record does not disclose how long the formaldehyde had been in the room before its presence was detected by plaintiff and his associates. It does show, however, that some three or four minutes elapsed after its discovery before the inmates were able to reach and open the door to the street which was the only opening the room contained.

Plaintiff claimed and offered medical testimony tending to support the claim that, as a result of inhaling the poisonous gas, he became afflicted with an acute inflammation of the throat and eyes, which after some days assumed a chronic condition, and continued in some degree up to the time of the trial.

Defendant, through its responsible agent, Mr. Drew, admitted that he introduced the formaldehyde into the room, but claimed that his purpose in doing so was to disinfect the premises; complaint having been received by him as to their unsanitary condition. Upon cross-examination, he testified:

"*Q.* So that on the night of the 6th and 7th of May you knew that they were in there?

"*A.* No, sir.

"*Q.* You knew that they had slept in there before?

"*A.* I did not know; I was told.

"*Q.* You just knew from what your night watchman had told you?

"*A.* I imagined that they were in there.

"*Q.* You had a suspicion that they were sleeping in there?

"*A.* Yes; I thought maybe they were sleeping in there.

"*Q.* You thought maybe they were sleeping in there on the night of the 6th and 7th of May?

"*A.* I thought maybe they were.    *    *    *

"*Q.* How long did it take you to get this formaldehyde in the room?

"*A.* Not any length of time. It takes as long as to bore a hole through a partition and afterwards pumping in with a bicycle pump. We shot it in. I don't know how many times. I don't know how much they hold.

"*Q.* What made you go around to the front door after you had fumigated it?

"*A.* I wanted to see if they were in there. My night watchman told me that they were sleeping on the premises, he thought, and I imagined they were.

"*Q.* You thought it would be a good way to wake them up and move them out?

"*A.* I thought if they wanted to get out they could. I wanted them out. I would like to have them out. I would not be trying to get them out if I did not want them out.

"*Q.* That is the reason you put it in there?

"*A.* Not that reason altogether, to fumigate the place, and at the same time if they wanted to get out they could. That is what I put it in there for; that is the purpose of it. I don't ask you to believe that that is the reason I put it in there. I put it in there to fumigate the place, and incidentally to make them uncomfortable if they wanted to get out. I knew that they would not desire friendliness. I have made inquiry as to whether formaldehyde was poisonous or not of John Mahon."

A member of the police force of the city, who visited the scene of the transaction at the time of its occurrence, testified:

"I had a talk with Mr. Drew, and he admitted that they had been pouring it into the hole there to drive the Greeks out; and he said that he thought if he could get them outside that he could take possession."

We think that this record shows conclusively that the claim of defendant that the poisonous drug was injected for the purpose of disinfecting the room was made in bad faith. But whether the claim was made honestly or otherwise, defendant's liability would remain the same. The time and method chosen for the performance of the work, coupled with Drew's knowledge of the fact that

172 Mich.—16.

plaintiff was in the room, was sufficient to make the defendant liable for all damages resulting from the wrongful act.

Upon the question of damages, the court charged:

" If you find that there was an injury to the plaintiff, but if you find that the injury was merely an aggravation of some other condition which existed prior to the time of his exposure to the formaldehyde, and if you find that the exposure merely aggravated a prior condition, then the plaintiff is not entitled to recover for such aggravated condition, because he has not counted for it in this case.

"*Mr. Miller*: There is no evidence of any pre-existing condition whatever. The evidence is that the man was healthy before. I submit that that is not in the case, your honor, and you should not charge it.

" *The Court:* If you conclude from the testimony in this case that such exposure of the plaintiff to the formaldehyde, for the purpose that has been testified to in this case, could not produce any such effect as the plaintiff claims was produced, then you may consider whether or not the condition which he testified to as having occurred from that actually did result from that, or was an aggravation of some other condition which the plaintiff might not have been conscious of. If you determine, as a matter of fact, that the exposure, which appears to have happened in this case, to these fumes would not cause such a condition as the plaintiff testified to, from what you have heard as to practical demonstration and scientific theories upon the effects of formaldehyde, then, if it is found to be some other cause, which you cannot account for, and if you find it is due to some other cause, which you cannot account for, the plaintiff would not be entitled to recover for that. Or, if you find that such an effect, with such an exposure, could not have possibly been produced, unless some other condition existed, then you may conclude that such other condition did not exist for that purpose. So I say, gentlemen of the jury, if you find that what the plaintiff has testified to be a fact as to his continued condition was not due to formaldehyde, but may have been due to some other cause, or may have been merely an aggravation of a prior existing condition, he cannot recover for that in this case, because there is no such damage as that counted upon in the declaration. I think I have covered all provisions of the case."

This instruction was clearly erroneous. There is no testimony tending to show that plaintiff was ailing in any respect prior to the commission of the wrong complained of. On the contrary, the record shows that up to that time he never, during all his life, had had trouble with his eyes or throat. *Campau* v. *North*, 39 Mich. 606 (33 Am. Rep. 433). Upon the record as presented, but one question should have been submitted to the jury—that of plaintiff's damage.

The judgment is reversed, and a new trial ordered.

MOORE, C. J., and STEERE, McALVAY, STONE, OSTRANDER, and BIRD, JJ., concurred.